**UNITED STATES DISTRICT COURT
DISTRICT OF WYOMING
CHEYENNE DIVISION**

| | |
|---|---|
| PHILIP SAUNDERS, individually and on behalf of all others similarly situated,<br><br>v.<br><br>CNC OILFIELD SERVICES, LLC | Case No. _____<br>FLSA Collective Action<br><br>**Plaintiff's Original Collective Action Complaint** |

## SUMMARY

1. Philip Saunders brings this lawsuit to recover unpaid overtime wages and other damages under the Fair Labor Standards Act (FLSA) for the time he worked for CNC in Wyoming.

2. CNC Oilfield Services, LLC offers oilfield support operations, including transportation of fluids and materials to and from drill sites.

3. Saunders was a CNC driver who performed such work in Wyoming.

4. CNC employs many drivers in Wyoming like Saunders.

5. Saunders, like other CNC drivers, was paid based on the loads he hauled without regard to the number of hours he worked.

6. Saunders regularly worked overtime for CNC in Wyoming.

7. But CNC did not pay Saunders overtime for the hours he worked driving in excess of 40 in a workweek.

8. Saunders also performed hourly work for CNC in Wyoming, which was paid differently from his time as a driver.

9. When doing non-driving work for CNC in Wyoming, CNC paid Saunders on an hourly basis.

10. But even when working on an hourly basis, CNC did not pay Saunders and other hourly workers overtime as required by federal law.

11. Instead, CNC paid these workers the same hourly rate for all non-driving hours worked in Wyoming, including those in excess of 40 in a workweek.

12. This collective action seeks to recover the unpaid wages and other damages owed to Saunders and other workers like him at CNC for time worked in Wyoming.

### JURISDICTION AND VENUE

13. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events at issue occurred in this District and Division.

15. Saunders performed work for CNC in this District and Division.

### PARTIES

16. Saunders was, at all relevant times, an employee of CNC.

17. Saunders worked for CNC from November 2018 until July 2020.

18. Saunders' written consent is attached as Exhibit A.

19. Saunders represents at least two classes of CNC employees.

20. The first class of similarly situated employees or potential class members sought to be certified (the "Driver Class"), is defined as:

> **All current and former drivers for CNC Oilfield Services, LLC working in Wyoming who were not paid overtime, at any point in the past three years.**

21. The second class of similarly situated employees or potential class members sought to be certified (the "Straight Time Class") is defined as:

> **All current and former hourly employees of CNC Oilfield Services, LLC working in Wyoming who were, at any point in the past three years, paid "straight time for overtime."**

22. Together, the members of the Driver Class and the Straight Time Class are referred to as the "Putative Class Members."

23. CNC is a Louisiana limited liability company.

24. CNC conducts business in a systematic and continuous manner throughout Wyoming, including this District and Division.

25. CNC may be served by service upon its registered agent, **Registered Agent Solutions, Inc., 125 S. King St., PO Box 2922, Jackson, WY 83001**, or by any other method authorized by law.

## COVERAGE UNDER THE FLSA

26. CNC was an employer of Saunders within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

27. CNC was an employer of the Putative Class Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

28. CNC was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

29. During at least the last three years, CNC has had gross annual sales in excess of $500,000.

30. CNC was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

31. CNC employs many workers, including Saunders, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise

work on goods or materials that have been moved in or produced for commerce by any person.

32. The goods and materials handled, sold, or otherwise worked on by Saunders and other CNC employees and that have been moved in interstate commerce include, but are not limited to, tanks, fluids, motor vehicles, and other oilfield equipment and supplies.

**FACTS**

33. CNC provides a variety of support services for oilfield operations.

34. Among CNC's oilfield support services are its vacuum truck and trucking services.

35. Saunders was employed as a driver providing services to CNC's clients.

36. Saunders drove a vacuum truck to and from a wellsite.

37. Saunders would transport saltwater and freshwater to and from the wellsite.

38. For example, Saunders would often transport saltwater from one wellsite to another, or to disposal.

39. None of the items Saunders would transport are hazardous.

40. The trucks Saunders drove did not have a hazard placard.

41. CNC paid Saunders on a per load basis.

42. When working as a driver, CNC paid Saunders on a per load basis.

43. CNC paid Saunders a percentage of every load that was hauled.

44. When he did work other than driving, CNC paid Saunders by the hour.

45. When CNC paid Saunders on an hourly basis, he was paid the same rate for all hours worked.

46. Even if Saunders worked more than 40 hours in a week, all of his hourly work was paid at the same rate.

47. Thus, rather than receiving time-and-a-half as required by the FLSA, Saunders only received "straight-time" pay for overtime hours worked that were paid by the hour.

48. This "straight-time-for-overtime" payment scheme violates the FLSA.

49. CNC did not pay Saunders a salary.

50. CNC also paid Saunders additional compensation, including non-discretionary bonuses.

51. Saunders normally worked more than 40 hours in a week.

52. Saunders usually worked more than 12 hours in each shift, and he each regularly worked 14 or more hours each day.

53. Saunders reported the hours he worked to CNC on a regular basis.

54. Saunders' hours are reflected in CNC's records.

55. Saunders was scheduled to work a 12-hour shift.

56. CNC did not pay Saunders or the Driver Class Members for all of their work time.

57. CNC did not pay Saunders or the Driver Class Members overtime for hours worked over 40 in a workweek.

58. Of course, then, when they worked more than 40 hours in a week, CNC did not pay Saunders at 1.5x his regular rate for his overtime hours.

59. While working out of Wyoming, Saunders did not drive for CNC outside of Wyoming.

60. As part of his driving for CNC in Wyoming, Saunders did not go to any other states.

61. As part of CNC's pool of Wyoming drivers, Saunders did not go to any other states.

62. The other drivers in the Wyoming pool, like Saunders, who performed work driving to and from drill sites, did not drive out of Wyoming.

63. While working in Wyoming, none of these drivers were asked to travel outside of Wyoming.

64. CNC was well aware of the overtime requirements of the FLSA.

65. CNC knew Saunders was working more than 40 hours per week.

66. CNC knew the other drivers, like Saunders, who performed work driving to and from drill sites, were working more than 40 hours per week.

67. CNC knew Saunders did not drive outside of Wyoming while working out of the Wyoming pool.

68. CNC knew the other vacuum truck drivers, like Saunders, who performed work driving to and from drill sites in Wyoming, were not driving out of state.

69. CNC nonetheless failed to pay proper overtime to certain employees, such as Saunders.

70. These employees performed work that is primarily manual labor in nature.

71. Under the FLSA, the work performed by these employees is non-exempt manual labor.

72. Saunders and the Putative Class Members were not allowed to vary from the job duties that were predetermined for them.

73. Truly, these workers have little or no discretion in how to do their job, or the jobs of others they work with.

74. Even though Saunders and the Putative Class Members perform very routine, technical, and manual labor job duties, CNC uniformly failed to pay proper, or any, overtime to these workers.

75. CNC also employed drivers out of its offices in Dilley, Texas.

76. The drivers in the Wyoming pool had the same general job duties as the drivers in the Dilley, Texas pool.

77. The drivers in the Wyoming pool were compensated in the same general way as the drivers in the Dilley, Texas pool.

78. Like the Wyoming drivers, the drivers in the Dilley, Texas pool were also paid a percentage of every load that was hauled.

79. Like the Wyoming drivers, the drivers in the Dilley, Texas pool were not paid an overtime premium for hours worked each week over 40.

80. CNC's hourly workers in Dilley, Texas were also paid at the same hourly rate for all hours worked, including overtime.

81. CNC's hourly workers based in Dilley, Texas were paid similarly to CNC's hourly workers in Wyoming.

82. CNC knew, or showed reckless disregard for whether, its policy of not calculating and paying overtime at the full, regular hourly rate violated the FLSA.

83. CNC's failure to pay overtime to these workers was, and is, a willful violation of the FLSA.

### COLLECTIVE ACTION ALLEGATIONS FOR DRIVER CLASS

84. Saunders incorporates all other allegations.

85. The illegal pay practices CNC imposed on Saunders were likewise imposed on the Driver Class Members.

86. CNC employs many other hourly workers who worked over 40 hours per week and were subject to CNC's same pattern, practice, and policy of failing to pay overtime at 1.5x the workers' regular rates of pay.

87. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

88. Based on his experience and tenure with CNC, Saunders is aware that CNC's illegal practices were imposed on the Driver Class Members.

89. These workers were similarly situated within the meaning of the FLSA.

90. CNC's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Driver Class Members.

### COLLECTIVE ACTION ALLEGATIONS FOR STRAIGHT TIME CLASS

91. Saunders incorporates all other allegations.

92. CNC's illegal "straight time for overtime" policy extends well beyond Saunders.

93. It is the "straight time for overtime" payment plan that is the "policy that is alleged to violate the FLSA" in this FLSA collective action. *Bursell v. Tommy's Seafood Steakhouse*, No. CIV.A. H-06-0386, 2006 WL 3227334, at *3 (S.D. Tex. Nov. 3, 2006); *see also, e.g., Wellman v. Grand Isle Shipyard, Inc.*, No. CIV.A. 14-831, 2014 WL 5810529, at *5

(E.D. La. Nov. 7, 2014) (certifying "straight time for overtime" claim for collective treatment).

94. CNC has paid other hourly workers according to the same unlawful scheme.

95. Any differences in job duties do not detract from the fact that these hourly workers were entitled to overtime pay.

96. The workers impacted by CNC's "straight time for overtime" scheme should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

### CAUSE OF ACTION–OVERTIME VIOLATIONS OF THE FLSA

97. Saunders incorporates all other allegations.

98. By failing to pay Saunders and the Putative Class Members overtime at 1.5 times their regular rates, CNC violated the FLSA. 29 U.S.C. § 207(a).

99. CNC owes Saunders and the Putative Class Members the difference between the rate actually paid and the proper overtime rate for the work they did in Wyoming.

100. Because CNC knew, or showed reckless disregard for whether, its pay practices violated the FLSA, CNC owes these wages for at least the past three years for the work they did in Wyoming.

101. CNC also owes Saunders and the Putative Class Members an amount equal to the unpaid overtime wages as liquidated damages for the work they did in Wyoming.

102. Saunders and the Putative Class Members are entitled to recover all reasonable attorneys' fees, costs, and expenses incurred in this action.

### RELIEF SOUGHT

103. Wherefore, Saunders prays for judgment against CNC as follows:

    (a) For an order certifying this case as a collective action for the purposes of the FLSA claims;

(b)   For an order finding CNC liable for violations of state and federal wage laws with respect to Saunders and all Putative Class Members covered by this case;

(c)   For a judgment awarding all unpaid wages, liquidated damages, and/or penalty damages, to Saunders and all Putative Class Members covered by this case;

(d)   For a judgment awarding Saunders and all Putative Class Members covered by this case their costs of this action;

(e)   For a judgment awarding Saunders and all Putative Class Members covered by this case their attorneys' fees;

(f)   For a judgment awarding Saunders and all Putative Class Members covered by this case pre- and post-judgment interest at the highest rates allowed by law; and

(g)   For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

*/s/ Dustin T. Lujan*

By: _____

**Dustin T. Lujan**
WSB # 7-5574
**LUJAN LAW OFFICE**
1601 Capitol Ave., Ste. 310 #A559
Cheyenne, WY 82001
phone 970 999 4225
wyoadvocate@gmail.com

**Matthew S. Parmet**
Texas Bar # 24069719
*seeking admission pro hac vice*
**PARMET PC**
3 Riverway, Ste. 1910
Houston, Texas 77056
phone 713 999 5228
matt@parmet.law

**Attorneys for Plaintiff**